CLERK'S OFFICE
A TRUE COPY
Aug 28, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Records and information associated with the cellular device assigned call number 414-394-2496 that is in the custody or control of T-Mobile, more fully described in Attachment A

Case No. 23 MJ 160

Matter Number 2023R00201

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

see Attachment A

located in the ______ District of ______, there is now concealed *(identify the person or describe the property to be seized)*:

see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 843 | use of a communication device in furtherance of drug trafficking |
| 21 U.S.C. 841 | distribution and possession with intent to distribute controlled substances |
| 21 U.S.C. 846 | conspiracy to distribute and possess with the intent to distribute controlled substan |

The application is based on these facts:

see attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ______ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

TFO DEA Aaron Hoppe
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 8/28/2023

*Judge's signature*

City and state: Milwaukee, WI

U.S. Magistrate Judge William E. Duffin
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**
**Matter Number 2023R00201**

I, Aaron Hoppe, a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA), being first duly sworn, hereby depose and state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call numbers **414-394-2496** (the "Target Cell Phone"), who service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The Target Cell Phone are described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

3. In this application, the United States seeks (1) historical cell-site location information; (2) historical precision location information; (3) prospective, real-time cell-site location information; (4) prospective, real-time precision location information (i.e., E-911 Phase II data and GPS); and (5) subscriber information and other historic non-content records and information.

4. Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

5. I have been a law enforcement officer since May 30, 2007. I am currently assigned to the Waukesha County Sheriff's Department Detective Bureau. I have been assigned to a Federal Drug Task Force (Milwaukee HIDTA) and have been assigned to the Waukesha County Metro Drug Unit in 2012-2013, 2015-2017, and from 2022-Present. I have been a part of hundreds of state and federal investigations related to drug activity.

6. I have received extensive training on the investigation of death investigation, narcotics investigation, cell phone analytics, and I am currently a member of the Board of Directors for the Wisconsin Association of Homicide Investigation.

7. I have conducted investigation ranging from death, drug, property, and child exploitative crimes by analyzing cell phone data including tower usage, call activity, and cellular activity while trying to pinpoint certain locations of suspects and/or victims. I know that when conducting an investigation into many drug investigations, and drug related death investigations that the cellular phone data will be a key piece of evidence based on my training and experience. Individuals who sell and use narcotics will mainly utilize their cell phone to set up a transaction for narcotics utilizing their cellular phone or a special application downloaded on their phone. I

know it is common practice for most people to rely heavily on the use of cellular telephones or electronic devices for many aspects of their daily lives. People commonly use cellular telephones or electronic devices to send and receive text messages, make voice calls, interact on social media, store contact information, store personal identifying data, maintain calendars or agendas, utilize maps or GPS functions, access the internet, and take photographs and videos, which are also used by drug traffickers.

8. I have received training in the investigation of unlawful possession of firearms and possession of firearms by prohibited persons, as well as drug trafficking and related offenses. I have been trained regarding these offenses and has arrested individuals for federal firearms related offenses, as well as drug trafficking offenses. I have also investigated drug trafficking offenses at the state and federal level, including violations of Title 18, United States Code, Section 922(o) and Title 21, United States Code, Sections 841 and 846. I know from training and experience that those that commit crimes commonly communicate, photograph, videotape, and organize using electronic devices, including by phone call, text message, electronic mail, messaging application, and social media.

9. I have participated in numerous investigations involving the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these devices. I have also participated in investigations involving the use of historical and prospective location information to identify targets, map patterns of travel, corroborate other evidence, and apprehend persons to be arrested. On numerous occasions, this electronic evidence has provided proof of the crimes being investigated and corroborated information already known or suspected by law enforcement. During the course of my

investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

10. I have participated in the execution of numerous search warrants in which weapons, narcotics, and/or evidence of drug trafficking were seized in violation of state and federal laws. I am familiar with the different types and calibers of firearms and ammunition commonly possessed for illegal purposes, as well as the methods used to conduct narcotics trafficking. I have had a variety of formal, informal, and on the job training in the investigation of illegal firearms possession firearms trafficking, and drug trafficking. Additionally, I am familiar with street name(s) of firearms, controlled substances, and respective related topics, as well as has knowledge of the use of money laundering to conceal ill-gotten money.

11. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interviews with cooperating witnesses, and informants, whose reliability is established separately herein.

12. The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; recorded conversations; controlled buys; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures. However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not

included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrant.

13. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that possible crimes of use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances; and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Dominique K. LUCKETT, Laquanda KITTLER, and other identified and unidentified subjects. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## II. PROBABLE CAUSE

### A. Background and Summary of Investigation

14. Beginning in April 2023, Drug Enforcement Agency (DEA) and the Waukesha Metro Drug Unit and other local law enforcement agencies, hereinafter referred to as "case agents," began investigating a drug trafficking organization (DTO) operating in the Eastern District of Wisconsin (WI) which involves Dominique K. LUCKETT, Laquanda KITTLER and other identified and unidentified subjects. Through several arrest with drug seizures, confidential sources, physical surveillance, and electronic surveillance case agents have learned this DTO sells heroin and methamphetamine. Case agents also determined that LUCKETT utilizes multiple residences and multiple vehicles, to store and distribute his narcotics throughout the Eastern District of Wisconsin.

15. In April 2023, case agents learned that the Manitowoc County Sheriff's Metro Drug Unit was conducting an investigation into a possible source of supply of fentanyl, heroin and methamphetamine in the Manitowoc area. This individual was only identified as "Icy" at the time, using telephone number 414-998-5926.

**B. Debrief of Confidential Sources (CS)**

16. During the investigation into LUCKETT and the DTO, case agents became aware of several CS that appeared to be working with LUCKETT.

**a. CS 1 and CS 2**

17. Case agents were notified by the Manitowoc County Sheriff's Department of CS 1 that had information regarding LUCKETT. CS 1 and CS 2 were arrested on June 8, 2023 after being near the area of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).** During the arrest of CS 1 and CS 2, 2.04 grams of fentanyl was located inside their vehicle. Based on the information obtained, CS 1 and CS 2 had been to **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** on the morning on June 8, 2023 in an attempt to purchase a large quantity of methamphetamine but were unable to complete the purchase at the time due to LUCKETT not having met with his source prior to meeting with CS 1 and CS 2. CS 1 and CS 2 met with another individual after being directed to that person by someone CS 1 and CS 2 knew as "Rico." CS 1 and CS 2 stated that "Rico" and LUCKETT could not meet with them and were directed to this different individual that CS 1 and CS 2 met with in the area of 4422 West Hampton Avenue, Milwaukee, Wisconsin where CS 1 and CS 2 purchased cocaine and fentanyl from this unidentified black male at the direction of LUCKETT and "Rico." CS 1 and Cs 2 were later arrested with

18. On June 16, 2023 case agents interviewed CS 1. CS 1 stated that he/she had met LUCKETT through another individual in October 2022. CS 1 originally knew LUCKETT went by the name "ICY." CS 1 knew of multiple locations where LUCKETT was known to sell narcotics out of but described originally meeting LUCKETT at an apartment complex in the area of West Dean Road, Brown Deer, Wisconsin. CS 1 was going to that apartment complex frequently and would pick up approximately 50 grams of fentanyl. LUCKETT would have CS 1 and whoever he/she was with "test" the fentanyl. LUCKETT would ask CS 1 to grade the substance on a "1-10 scale" with 1 being the worst and 10 being the best. CS 1 indicated that if the fentanyl was not given a "good grade" or if it was too strong, LUCKETT would mix the fentanyl with a cutting in front of him/her. LUCKETT would continue this process until he was satisfied with the grades that CS 1 was given.

19. CS 1 explained he/she did not have any contact with LUCKETT from November 2022 through February 2023. Around March 2023 CS 1 began purchasing small amounts, usually 1-2 grams, of fentanyl from LUCKETT at the same apartment complex in the area of West Dean Road, Brown Deer, Wisconsin.

20. In March of 2023, CS 1 purchased fentanyl from the girlfriend of LUCKETT, whom CS 1 knew as "KILLER." As part of the investigation into LUCKETT, case agents believed Laquanda KITTLER is the girlfriend of LUCKETT. CS 1 provide a description of "KILLER" as a short black, darker complexion, female, who was pregnant. CS 1's description of "KILLER" is consistent with KITTLER. CS 1 stated that he/she helped KITTLER move into a condo in February or March 2023. CS 1 stated that the condo was on the first floor. CS 1 had trouble identifying where the condo was and thought it might be off of Pittsburgh Street. Case agents later determined KITTLER's condo was located at **901 West Winnebago Street, #131, Milwaukee, Wisconsin**

**(TARGET LOCATION 3),** which is about 2 miles north of Pittsburgh Street in Milwaukee, Wisconsin.

21. CS 1 met with the individual believed to be KITTLER at an apartment complex which he/she believed was 4319 West Marion Street. Milwaukee, Wisconsin, but case agents later determined the correct address to be **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. 4319 West Marion Street. Milwaukee, Wisconsin is one street south of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).** CS 1 stated that KITTLER is currently pregnant (at the time of the interview) which was later confirmed by case agents through surveillance. CS 1 stated that by the end of March 2023, he/she was purchasing 1-5 grams of fentanyl on a nearly everyday basis. CS 1 stated that LUCKETT has equipment used for mixing and cutting the narcotics, such as a blender, a kilo press, digital scales, and a fan along with different type of cutting agents, such as sugar at the residence at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**.

22. CS 1 stated that he/she had been purchasing fentanyl from LUCKETT with CS 2, and was aware that CS 2 had an debt of $4,100.00. CS 1 stated that this debt was due to CS 2 being "fronted" 75 grams of fentanyl and one ounce of methamphetamine. Case agents know the term "fronts" to mean that the narcotics are given to the subject who later pays the debt off after selling the narcotics that was initially given to them. CS 1 stated that LUCKETT requested that CS 1 "shoot of poison" CS 2's dog as retaliation for CS 2 not paying LUCKETT back the drug debt. CS 1 refused, and LUCKETT requested a meeting with CS 1 and CS 2 near the end of April 2023, where it was agreed that LUCKETT would provide CS 1 with 75 grams of fentanyl. CS 1 was then expected to assist CS 2 in selling the fentanyl in addition to issuing smaller amounts to

CS 2, as there were concerns CS 2 was using most of the fentanyl he/she was receiving from LUCKETT.

23. CS 1 described an incident that occurred in May 2023, where LUCKETT was out of town on a “Texas trip” and CS 1 picked up 25 grams of fentanyl from KITTLER at the apartments on **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).** CS 1 stated that there was a bag of fentanyl which CS 1 believed contained over 150 grams of fentanyl. CS 1 observed KITTLER weigh out 25 grams and place it in a bag before turning the bag with 25 grams of fentanyl in it to CS 1.

24. CS 1 continued to pick up fentanyl from LUCKETT through the beginning of June 2023, where CS 1 would pick up anywhere from 75-100 grams of fentanyl from LUCKETT. CS 1 was aware that LUCKETT had recently been attempting to purchase large quantities of methamphetamine from a new source.

25. CS 1 provided two numbers they had for LUCKETT and had previously utilized both numbers to conduct these drug transactions. The numbers were identified as 414-998-1157 and 414-998-5926. Through the investigation into LUCKETT and review of law enforcement databased, 414-998-1157 and 414-998-5926 were numbers case agents determined were being used by LUCKETT.

26. CS 1 stated that there are two bedrooms in the apartment located at **4319 West Rice Street, Milwaukee, Wisconsin (TAREGET LOCATION 2)** and one of the bedrooms is used by LUCKETT and the other is utilized by another male. CS 1 stated there are handguns and long guns inside **4319 West Rice Street, Milwaukee, Wisconsin (TAREGET LOCATION 2)** which belong to LUCKETT.

27. CS 1's information is credible and reliable because CS 1 has given information concerning his/her own criminal conduct and other individuals involved in illegal activities, which has been independently corroborated and verified through this investigation. This includes information obtained from various public databases, physical surveillance, and records obtained relating to LUCKETT. CS 1 is not receiving monetary compensation for his/her cooperation. CS 1 has no criminal convictions, but currently has open case for child abuse and drug related charges. CS 1 is not cooperating for consideration towards these open maters.

28. Case agents learned CS 2 arrested regarding drug offenses by the Manitowoc County Sheriff's Office, who had information regarding LUCKETT. CS 2 was interviewed by case agents on June 19, 2023.

29. CS 2 stated that in 2022 he/she met LUCKETT, whom CS 2 knew by "ICY" but also was aware of his real name, Dominique LUCKETT. CS 2 began purchasing small user amounts of 1-2 grams heroin from LUCKETT. CS 2 eventually began being fronted larger amounts, originally only 5 grams due to CS 2's habit which concerned LUCKETT. CS 2 then started obtaining 10 grams of heroin and would meet with LUCKETT multiple times during a week to obtain the controlled substances. In March or April of 2023, CS 2 began going to LUCKETT with another individual and was picking up 50-100 grams of heroin at a time. CS 2 stated that he/she had a debt of $4,100.00 after being fronted heroin. CS 2 admitted that he/she was selling small portions of the heroin but that CS 2 was using a large portion of it to support his/her addiction. CS 2 stated that he/she has been to two different locations to obtain controlled substances from LUCKETT. CS 2 identified a location of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** and another apartment "near a Walmart", which CS 2 could not further identify. CS 2 had seen LUCKETT in possession of large amounts of

heroin/fentanyl and had been present when LUCKETT "steps on it." Based on my training, experience, and investigation into LUCKETT, I believe the phrase "steps on it" means the process of diluting the potency of a controlled substance to create a large amount of the substance by mixing in different assortments of products. CS 2 has seen LUCKETT mix heroin, fentanyl, lactose, and powdered sugar together in a blender and using a press to complete the process. CS 2 stated that LUCKETT informed him/her that LUCKETT has "4 apartments" in the Milwaukee area that he pays for, which LUCKETT uses for drug trafficking. CS 2 has seen LUCKETT in possession of handguns with extended magazines and knows that LUCKETT has a shotgun that LUCKETT keeps in a closet. CS 2 also described an individual he/she only knows as "RICO" that is also involved with LUCKETT and has purchased drugs from "RICO" in the past also.

30. CS 2's information is credible and reliable because CS 2 has given information concerning his/her own criminal conduct and other individuals involved in illegal activities, which has been independently corroborated and verified through this investigation. This includes information obtained from various public databases, physical surveillance, and records obtained relating to LUCKETT. CS 2 is not receiving monetary compensation for his/her cooperation. CS 2 has no criminal convictions, though he/she is out on bail for drug related charges. CS 2 is not cooperating for consideration towards his/her open charges.

**b. CS 3**

31. Case agents learned of CS 3 that was arrested for drug offenses by the Washington County Sheriff's Office and had information regarding LUCKETT. On July 27, 2023, CS 3 was interviewed by law enforcement.

32. CS 3 stated his/her fentanyl source's nickname is, "Icy." CS 3 later subsequently identified "Icy" as LUCKETT through Wisconsin Department of Transportation (DOT) and

booking photos. CS 3 had been purchasing fentanyl from LUCKETT for approximately 6 months. CS 3 had been purchasing fentanyl from LUCKETTE twice a week during those 6 months. CS 3 stated at first, he/she was buying 15 grams twice a week for approximately a month and a half. CS 3 stated he/she then moved up in weight by purchasing quantities such as, 30 grams, 50 grams, 100 grams, and approximately two weeks prior to the CS 3's interview, CS 3 purchased 175 grams of fentanyl from LUCKETTE.

33. CS 3 stated that the LUCKETT "fronts" the fentanyl to CS 3. Based on my training and experience, "front" means the drug traffickers provides the buyer with controlled substances without receiving payment immediately, but then a drug debt is owed that the buyers must pay back to the seller.

34. CS 3 stated the estimated cost of a 175 gram heroin deal with LUCKETT is $7,000. CS 3 contacts LUCKETT via cell phone to arrange for the purchase of drugs and identified LUCKETT's number as 414-998-5926. CS 3 identified two residences in which he/she has met LUCKETT at, **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**.

35. CS 3 identified LUCKETT's "personal residence" as, **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. CS 3 stated there are two dogs at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**, one being a teacup bulldog, and another larger bulldog. CS 3 stated had been inside **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** on numerous occasions to conduct drug transactions with LUCKETT.

36. CS 3 also identified **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** as an apartment where he/she had met LUCKETT at to conduct drug transactions. CS 3 has never met LUCKETT anywhere else to conduct drug transactions.

37. CS 3 stated LUCKETT gets, "shipments" of heroin/fentanyl, and methamphetamine delivered to him at his doorstep at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. CS 3 is unaware if the narcotics are delivered via USPS, courier service, or the narcotics are brought to LUCKETT by an individual. CS 3 was able to describe LUCKETT's most recent purchase of methamphetamine as being over $10,000 in value. CS 3 stated that shipment arrived on July 23, 2023. CS 3 has never seen carrier boxes at the residence. CS 3 further indicated LUCKETT keeps the drugs in a silver safe at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**.

38. CS 3's information is credible and reliable because CS 3 has given information concerning his/her own criminal conduct and other individuals involved in illegal activities, which has been independently corroborated and verified through this investigation. This includes information obtained from various public databases, physical surveillance, and records obtained relating to LUCKETT. CS 3 is not receiving monetary compensation for his/her cooperation. CS 3 has two previous misdemeanor drug convictions and an operating while intoxicated and operating after revocation convictions. CS 3 is not cooperating for consideration towards these open maters.

**c. CS 4**

39. Case agents learned of a citizen, CS 4, who wanted to provide information regarding LUCKETT. Case agents learned that CS 4 had contacted the Village of Brown Deer

Police Department on multiple occasions to report drug activity, specifically that LUCKETT was selling narcotics out of his residence at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**.

40. On July 27, 2023, case agents interviewed CS 4. CS 4 stated that LUCKETT had moved into **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** recently. CS 4 stated that since LUCKETT moved in, CS 4 had noticed a large number of individuals coming and going, to and from **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. CS-4 stated that this occurs during all times of the day, including in the early morning hours. CS 4 heard "people banging" on the door leading to **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**.

41. CS 4 has witnessed multiple different vehicles drive into the shared parking lot and has witnessed LUCKETT exit **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and complete what CS 4 believed were drug transactions. CS 4 explained that during most of these encounters, LUCKETT will exit **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and walk up to the driver's side window of the vehicle. LUCKETT appears to hand something to the operator or passenger. LUCKETT will appear to accept something in return and will walk away. CS 4 will then observe the vehicle exit the lot and LUCKETT return to **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. CS 4 stated that he/she has observed multiple individuals pull into the lot and walk into LUCKETT'S apartment, **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1),** holding a bag, either a handbag, gym bag, or possibly a backpack, depending on the person. The individual will stay for a short

period of time and then exit with the bag and return to their vehicle and exit the lot. Based on my training, experience, and investigation into LUCKETT, the conduct described by CS 4 in the parking and at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** is consistent with drug transactions.

42. CS 4 stated that LUCKETT is usually operating the Nissan Altima and has a girlfriend who is expecting a child in the near future. This information is consistent with information case agents obtained during the investigation into LUCKETT from law enforcement databases, surveillance and from CS 1.

43. CS 4 also stated that there "is always someone at the apartment" (referring to **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)).** CS 4 indicated that there appears to be someone, what they described as "keeping watch" at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** when LUCKETT is not at the residence. CS 4 stated that he/she does not believe that **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** is ever empty and there is always at least "one male" at the residence.

44. CS 4 then provided photos beginning on July 27, 2023, July 28, 2023, July 29, 2023, July 30, 2023, August 2, 2023, August 3, 2023, August 12, 2023, August 13, 2023, August 14, 2023, August 17, 2023, August 18, 2023, August 20, 2023 and August 21, 2023. CS took the photos documenting LUCKETT's and other's conduct including several vehicles that had arrived in the parking lot for **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** The photos appear to depict vehicles with people that would either park and enter **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** for a short time or who would meet with LUCKETT directly in the parking lot outside **4460**

**West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. Again, in several of these photos, LUCKETT does walk up to the driver's side window of the vehicle and completes what appears to be a hand-to-hand transaction, based on my training and experience, before the vehicle leaves the lot. In many of the photos, there are children, believed to be LUCKETT's children, in the area of the transaction, and sometimes directly next to LUCKETT, while he appears to be completing the transaction. The pictures are consistent with information that has been learned through the investigation, including surveillance that has been conducted by case agents who have also observed LUCKETT meet with individuals in the parking lot outside **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**, along with individuals who have entered **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** for a short time before exiting. Some of the pictures also show LUCKETT operating a white 2017 Nissan Altima (Altima) with Wisconsin license plate AGY1227, which is registered to Laquanda KITTLER. Again, this information is consistent with case agents' surveillance of LUCKETT operating the Altima.

45. On August 18, 2023, case agents received information from CS 4 that he/she had observed an unidentified black female at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** CS 4 indicated it appeared that this female was conducting hand to hand transactions with individuals outside in the parking lot of **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. CS 4 stated that he/she are familiar with LUCKETT's a girlfriend, identified as Laquanda KITTLER, but do not believe this female was KITTLER based on the female's description, along with the fact the CS 4 believed KITTLER is still pregnant, and this female was not.

46. On August 17, 2023, August 18, 2023, and August 20, 2023, CS 4 sent case agents pictures containing photos of what appears to be individuals entering LUCKETT's residence of **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** or meeting with LUCKETT outside in the parking lot of **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** conducting what appeared to be hand to hand transactions.

47. On August 17, 2023, the photo appeared to show a grey sedan pull into a parking spot near **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** An older white male appeared to exit the sedan and walk towards **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. On August 17, 2023, there appeared to be a black Jeep SUV, that pulled in front of **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** garage. The photo showed an unidentified black female walk up to the front passenger seat of the Jeep SUV and appeared to conduct a hand to hand transaction. Based on my training, experience, and investigation into LUCKETT, this suspected hand-to-hand transaction in the photo would be consistent with a drug transaction.

48. Also on August 17, 2023 there were additional photos which appeared to show multiple people parked in the parking lot or in front of the garage for **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and appeared to enter LUCKETT's unit.

49. On August 18, 2023, there was photos that appeared to show an unidentified black female exit **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and enter the rear passenger seat of a grey sedan.

50. Photos obtained from CS 4 on August 20, 2023, appeared to show LUCKETT conducting multiple suspected hand to hand transactions with an individual in a grey sedan, and a blue or grey SUV. In addition, there is several pictures which appeared to show another unidentified black female approach a red sedan and enter the front passenger seat for a short time before exiting and returning to **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. Based on my training, experience, and investigation into LUCKETT, these photos were consistent with individuals likely engaged in drug trafficking.

51. CS 4 provided additional photos from August 21, 2023. The photos showed a red sedan arrived and parked near the garage of **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. An unknown white male appeared to exit out of the front driver's side and approach **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. LUCKETT is then observed meeting with this male in front of the garage of **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** It appeared that after this meeting, the white male returned to the sedan and an unknown white female exited the front passenger seat. The female then appeared to walk to the other side of the sedan and entered the front driver's seat, while the male entered the front passenger seat.

52. Additional photos from August 21, 2023, appeared to show another red sedan, unknown if it was the same one since the first one was taken in daylight and the second was in the hours of darkness. These photos are blurry, but appeared to show an individual exit the sedan and walk up to the garage at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and then appeared to be out of view but returned a short time later. Based on my training, experience, and investigation into LUCKETT, these photos that depict what

appear to be short term contacts with **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** would be consistent with LUCKETT engaged in drug trafficking.

53. CS 4 has continued to send photos and provide information regarding individuals coming and going from LUCKETT's residence, **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1),** and short-term contacts which appear to show hand to hand transactions, as recently as August 21, 2023.

54. CS 4's information is credible and reliable because CS 4 has given information concerning illegal activities, which has been independently corroborated and verified through this investigation. This includes information obtained from various public databases, physical surveillance, and records obtained relating to LUCKETT. CS 4 is receiving monetary compensation for his/her cooperation. CS 4 has no prior convictions.

**C. Other Police Contacts for LUCKETT**

55. Case agents learned of an incident involving LUCKETT and the mother of LUCKETT's 14-year-old daughter which occurred on June 14, 2023. The Village of Brown Deer Police Department (BDPD) had been contacted by CS 4, who informed BDPD of a disturbance at LUCKETT's apartment, **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. BDPD subsequently made contact with, Jasmine Hampton, the mother of LUCKETT's daughter, and LUCKETT. After completing the investigation, Hampton contacted the investigating BDPD via telephone, and informed BDPD that LUCKETT was "selling drugs out of his apartment." Hampton then specifically stated that the drug being sold was "heroin." CS 4 also provided BDPD information about his/her belief that LUCKETT was selling

narcotics out of **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** based on the amount of people coming and going from the residence.

56. On July 25, 2023, case agents learned that the Dodge County Sheriff's Office was conducting an investigation into Dominique LUCKETT. Case agents learned that this investigation was involving a fatal heroin overdose where an individual, identified as Samantha Hensler, was found deceased on the morning of April 9, 2023 at a residence located in Dodge County. The Dodge County Medical Examiner's Office did determine that the cause of Hensler's death was "fentanyl toxicity overdose." Case agents learned that based on the death investigation, the Dodge County Sheriff's Office believe that LUCKETT was in fact the individual who had supplied the known heroin/fentanyl that caused Hensler's death.

57. Dodge County Sheriff's Office conducted an interview with a boyfriend of Hensler, identified as Jeffrey Benke. During this interview, Benke stated that Hensler's fentanyl source was an individual with the name of "Ice," and that the phone number would be in Hensler's phone. The forensic download that was conducted on Hensler's cell phone and identified a phone number of 414-988-1157 in Hensler's phone download with the assigned contact of "Ice." This was the same number provided by CS 1 for "Icy," identified as LUCKETT.

58. Dodge County Sheriff's Office conducted a check of law enforcement databases and determined that 414-988-1157 was registered to Dominique LUCKETT. Dodge County Sheriff's Office learned that Hensler had been introduced to LUCKETT in February or March of 2022 and that Hensler had been buying drugs from LUCKETT since that time. Benke also admitted that he had been purchasing drugs in the past from LUCKETT as well and that he did overdose on drugs purchased from LUCKETT in the past.

59. Benke stated he knew LUCKETT deals in what he described as "kilos" of illicit drugs. While Benke did not know LUCKETT by his given name, he did describe LUCKETT as a tall, skinny, light skinned male with tattoos and stated he knew him as "Ice." The description Benke provided is consistent with LUCKETT, along with the same nickname that investigators have learned is either "Ice" or "Icy."

60. Case agents conducted a search of the number 414-998-1157, a telephone number associated to LUCKETT, on CashApp, which was associated to a CashApp account identified as "Icy Broke" with username "$needmines19."

61. Benke stated that LUCKETT usually used CashApp to collect money for his drug transactions, and stated Hensler would have made purchases from LUCKETT and paid him through CashApp. Benke stated that LUCKETT resided at a residence located in Milwaukee, Wisconsin but was unsure of the exact address.

62. Based on the review of the phone extraction, it was believed that Hensler had purchased heroin or fentanyl from LUCKETT on April 6, 2023. Case agents conducted a search of the number 414-998-1157, a telephone number associated with LUCKETT, on CashApp, which was associated to a CashApp account identified as "Icy Broke" with the username "$needmines19." Case agents obtained LUCKKETT's CashApp records then from a grand jury subpoena and reviewed LUCKETT's CashApp records. Case agents observed that there was a transfer from the account in the name of "Samantha Hensler," the deceased, to LUCKETT on April 6, 2023 for $28. There were also additional transfers conducted on March 31, 2023 for $50; on March 28, 2023 for $100; on March 28, 2023 for $20; and on March 8, 2023 from Hensler for $375. All of these transfers were from "Samantha Hensler," (Hensler's account) to the account believed to be LUCKETT ("$needmines19").

63. Law enforcement have continued the investigation into Hensler's death, but based on the information that has been located so far, it appears that LUCKETT is the only individual that Hensler was picking up suspected heroin from and that there were no additional obvious drug transactions that occurred after April 6, 2023. Further, on April 6, 2023, it appeared there was contact between Hensler and LUCKETT and the CashApp records showing money transfers between the two.

64. On June 21, 2023, Manitowoc Investigators conducted an Act 79 search at the residence belonging to an individual identified as Randy Wilhelm. Wilhelm was previously identified as a source of heroin in the Manitowoc area, who was likely obtaining drugs from LUCKETT. During the search of Wilhelm's residence, law enforcement located 42.9 grams of fentanyl and 19.48 grams of methamphetamine. During a subsequent mirandized interview, Wilhelm stated that he is buying heroin and methamphetamine from LUCKETT.

**D. Wisconsin Department of Corrections (DOC) Contacts for LUCKETT**

65. Case agents reviewed Wisconsin DOT records, which indicated LUCKETT reported his residence as **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**. Case agents learned through LUCKETT's Wisconsin DOC records, **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** was also his mother's residence, Lenore Gardner. Case agents also reviewed WE Energies records on August 15, 2023, which indicated Lenore Gardner has an active account for **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4).**

66. LUCKETT is currently on extended supervision for possession with intent to deliver heroin and fleeing. LUCKETT reported to Wisconsin DOC that his residence is **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4).** On June 1, 2023,

LUCKETT reported to his probation agent that he did not have any changes to his address (**4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)).** LUCKETT was requesting to move in with his father "on the east side" due to his mother getting married and needing her "own space." Records from Wisconsin DOC did not indicate any change of residences was approved or provided.

67. Case agents learned from Wisconsin DOC records that probation and parole had contact with LUCKETT on May 9, 2022. Two different women, Laquanda KITTLER, and Jaylnn Smith, who both identified themselves as girlfriends of LUCKETT. KITTLER and Smith made allegations of threatening behavior and messages by LUCKETT. Probation identified the number provided by both Laquanda KITTLER and Jaylnn Smith as 414-998-1157, along with messages from LUCKETT using telephone number 414-998-1157.

68. Additionally, case agents were notified that probation and parole received several reports that LUCKETT is dealing large quantities of illegal narcotics. These reports were on April 26, 2022, April 29, 2022, August 1, 2022. On August 2, 2022, LUCKETT was taken into custody on a probation hold based on the allegations August 1, 2022 at this reported residence of **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**. LUCKETT was found to be in possession of four cell phones by his probation agents. Based on my training and experience, I know that drug traffickers will often use several phones to engage in their drug trafficking business. Unfortunately, LUCKETT's four telephones were turned over to a family member.

**E. Surveillance of LUCKETT**

69. On July 5, 2023, while monitoring the court authorized electronic surveillance of LUCKETT's telephone number 414-998-1157, known to be used by LUCKETT, case agents

observed that data indicated 414-998-1157 was in the area of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. Case agents then responded to the area of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** and at 11:28 am, observed a white Buick Encore bearing Wisconsin license plate 13841AFT, parked in the parking lot south of the entrance door to **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. Case agents later determined the vehicle was a rental, rented by LUCKETT. Case agents arrived shortly after and positioned their vehicle on North Sherman Boulevard, facing northbound. Case agents had a view of the entrance door for **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** and partial view of the parking lot. Shortly after case agents arrived, three males walked in and out of the apartment door of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. The males are described as follows: a black male wearing a black t-shirt, with hair described as long dreads that were tied up in to a ponytail; a black male wearing a black t-shirt with red writing, a gold chain and a baseball cap; and a light-skinned black male wearing a white tank top, with short cornrow-styled hair. The two males wearing black t-shirts were not recognized, however, the individual wearing the white tank top was believed to be LUCKETT.

70. Approximately twenty minutes later, case agents observed another unidentified male, described as light-skinned and wearing a neon green high visibility construction vest, sitting on the front porch of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. This male was ultimately observed entering the apartment. Shortly after, the unidentified male wearing the black t-shirt with hair in a ponytail entered a 2018 Chevrolet Malibu bearing Wisconsin license plate ANC-9795. The individual subsequently traveled southbound on North Sherman Boulevard. and out of view. A search through the Wisconsin DOT showed that the

Malibu was registered to Andrea L. Ivery, DOB: XX/XX/1997. Using law enforcement databases as well as Ivery's public Facebook profile page, case agents were able to positively identify the individual observed operating the Malibu as Darrian Gibbs, XX/XX/1990.

71. Approximately ten minutes later, case agents observed a female exit **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** and enter the driver's side front seat of the Buick Encore. The female ultimately began traveling southbound on North Sherman Boulevard. At approximately 12:30 pm, case agents observed the black male wearing the baseball cap and gold chain enter the driver position of a silver Infiniti SUV. At approximately 1:20 pm, case agents observed a Toyota Camry bearing Wisconsin license plate ANS-7058 enter the parking lot and observed a white male exit the front driver's side door of the Camry and enter **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. At approximately 2:00 pm, case agents observed four individuals exit **4319 West Rice Street, Milwaukee, Wisconsin** (**TARGET LOCATION 2)** and walk towards the parking lot. LUCKETT was then observed entering the Buick. The Buick subsequently exited the parking lot and was followed by case agents to the Department of Community Corrections, located at 6645 West Mill Road, Milwaukee, Wisconsin. Case agents know this to be the location where LUCKETT's Probation Officer's office is located.

72. On July 10, 2023, case agents conducted surveillance of LUCKETT and located him at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. At 12:00 pm, case agents observed **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** garage door open and observed LUCKETT's rental vehicle, a white Buick Encore bearing Wisconsin license plate 13841A, parked inside the garage. LUCKETT then exited the garage and walked to the mailbox and returned to **4460 West Deer Run Drive, #104,**

**Brown Deer, Wisconsin (TARGET LOCATION 1)**, by entering the garage and closing the garage door. At 12:15 pm, case agents observed a black Jeep Wrangler bearing WI license plate ANM-8616, park in visitor parking, and an unidentified black female exited the vehicle and appeared to open the garage door for **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and entered the garage, closing the garage door behind her.

73. At 12:55 pm, case agents observed a red Honda Civic, bearing Wisconsin license plate AJY-6890, pull into a visitor parking space near **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. The garage door then opened, and LUCKETT emerged from the garage and appeared to motion to the operator of the Civic. The operator, an unidentified white male, exited the Civic and walked towards LUCKETT. LUCKETT raised his right hand towards the male, but the case agent's view was obstructed and could not observed the remainder of what appeared to be a hand-to-hand transaction. The male then returned to the Civic and appeared to be "moving around" inside the vehicle for nearly 30 seconds before the Civic left the parking lot. Based on my training, experience, and investigation into LUCKETT, this short contact would be consistent with a quick hand to hand drug transaction. At 1:59 pm, case agents observed the unidentified black female emerge from the garage of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** with LUCKETT and after a brief interaction, the female returned to her vehicle and left the area.

74. On July 11, 2023, case agents conducted surveillance of LUCKETT and observed him leaving a Home Depot located at 4155 North Port Washington Road, Milwaukee, Wisconsin at 4:50 pm. LUCKETT was observed operating a white Buick Encore bearing Wisconsin license plate 13841A, which was a rental vehicle. LUCKETT was the listed operator on the rental agreement. Case agents observed an unidentified white male exit **4319 West Rice Street,**

**Milwaukee, Wisconsin (TARGET LOCATION 2)** and walk up to LUCKETT's rental and was momentarily out of view, and a few moments later, the white male returned to the **4319 West Rice Way, Milwaukee, Wisconsin (TARGET LOCATION 2)** apartment and LUCKETT, still operating the Buick, exited the lot. Based on my training, experience, and investigation into LUCKETT, this short contact would be consistent with a quick hand to hand drug transaction.

75. LUCKETT proceeded to travel to another location where LUCKETT is known to reside, located at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**, where he arrived at 5:17 pm. LUCKETT parked the vehicle outside of an assigned parking garage that is attached to the apartment. Case agents continued conducting surveillance and at 5:51 pm case agents observed a Silver Chrysler 300 arrived and parked in a visitor parking stall. This was near case agents who were conducting surveillance. Case agents observed three individuals, with two unidentified white males in the front driver's seat and front passenger seat, and an unidentified white female in the rear driver's side seat. The female exited the vehicle carrying a yellow bag and entered the apartment door of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. A short time later the garage door of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**, which LUCKETT had parked in front of, opened and the female exited with LUCKETT and both were observed entering LUCKETT's vehicle. LUCKETT entered the front passenger door and the female entered the front passenger door. A few minutes later, the female exited and walked back to the Chrysler and entered the rear passenger seat, and the Chrysler left the area. Case agents did obtain pictures of the female and operator which were later sent to investigators in Manitowoc County, who confirmed the identities of one of the males and the female and indicated that both

are known heroin/fentanyl users. Based on my training, experience, and investigation into LUCKETT, this contact would be consistent with a possible drug transaction.

76. At 6:15 pm, case agents observed the Honda Civic that was observed on surveillance on July 10, 2023 return. The same unidentified white male that was observed on July 10, 2023, was observed exiting the Civic and meeting with LUCKETT, outside of the garage. After a brief conversation, the male returned to his vehicle and left the area. Based on my training, experience, and investigation into LUCKETT, this short contact would be consistent with a quick hand to hand drug transaction.

77. On July 18, 2023, case agents were conducting surveillance at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and observed LUCKETT sitting in a chair inside of the garage. At 1:50 pm, case agents observed a black four door sedan, bearing Wisconsin license plate AJP-7005 which was not associated to any vehicle, pull up in a parking stall near the garage of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. An unidentified white male exited the sedan and met with LUCKETT. Case agents then observed a hand-to-hand transaction take place between the parties. Based on my training, experience, and investigation into LUCKETT, this contact would be consistent with a drug transaction. The unidentified male then entered the sedan's front driver's seat while LUCKETT entered the sedan's front passenger seat. At that point, the sedan left the lot and case agents followed the vehicle to a Holiday Inn Express located at 525 North Jefferson Street, Milwaukee, Wisconsin. Upon arriving at the Holiday Inn Express at 2:39 pm, LUCKETT exited the sedan and walked over towards the Altima. Case agents learned this vehicle was registered to Laquanda KITTLER, who has a listed address of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. Based on review of law enforcement

database case agents became aware that KITTLER is a girlfriend of LUCKETT. Further surveillance of LUCKETT and KITTLER is consistent with **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** being a possible stash house for LUCKETT. A black female believed to be KITTLER then exited the Holiday Inn Express and got into the Altima, with LUCKETT operating the vehicle. Both the sedan and Altima left the area at that time. LUCKETT and KITTLER then drove in the Altima to **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3),** where KITTLER is a renter of apartment 131. KITTLER was dropped off and LUCKETT then left the area.

78. During the surveillance on July 18, 2023, LUCKETT was observed by case agents using one red cell phone and one blue cellphone, which is consistent with information that LUCKETT uses multiple cell phones.

79. On July 19, 2023, case agents conducted surveillance on LUCKETT as he left his residence at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** at 2:25 pm. LUCKETT was operating the Altima that he was observed operating on July 18, 2023. Case agents followed LUCKETT to the Holiday inn Express at 525 North Jefferson Street, Milwaukee, Wisconsin, where KITTLER got into the front passenger seat. LUCKETT then traveled to the Blue-Ribbon Lofts located at **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3)**, where LUCKETT appeared to drop KITTLER off. Case agents observed KITTLER enter **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3)** as LUCKETT drove away. Case agents later obtained records from the apartment which indicated that KITTLER is the occupant of **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3).** LUCKETT was then followed to the 414 Exclusive clothing store located 5740 West Fond Du Lac Avenue,

Milwaukee, Wisconsin. LUCKETT exited the Altima and met with an unidentified white male outside of the store and after several minutes both parties entered the store. Approximately 20 minutes later, LUCKETT exited the store and returned to the Altima and proceeded back to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**.

80. On July 20, 2023, case agents were conducting surveillance on LUCKETT and located LUCKETT at White's Barber Shop located at 1658 West Hopkins Street, Milwaukee, Wisconsin. At 3:20 pm, case agents observed LUCKETT exit the store and appeared to be carrying a plastic bag that contained a blue substance inside of it, which was in his right hand. LUCKETT was then followed by case agents to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**, as he was again operating the Altima. LUCKETT returned at 3:35 pm and at 3:49 PM, case agents observed a red Subaru Forester bearing Wisconsin license plate 203-NRT, arrive and park in a stall in the parking lot of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. LUCKETT was observed walking through the parking with two juveniles. Case agents obtained LUCKETT with his left hand clinched and appeared to be holding something inside of his fist. LUCKETT continued through the parking lot and walked up to the driver's side door of the vehicle and handed something to the driver and walked away from the vehicle. Based on my training, experience, and investigation into LUCKETT, this contact would be consistent with a hand to hand drug transaction.

81. Case agents reviewed court authorized electronic surveillance of LUCKETT's telephone 414-998-1157. LUCKETT's telephone number 414-998-1157 on July 29, 2023 indicated that LUCKETT was in the area of his mother's residence **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**.

82. Case agents conducted surveillance of **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** and observed what appeared to be functioning surveillance cameras on the front, side, and rear portion of **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**. Based on my training and experience, I am aware that those who are in engaged in drug trafficking will often use surveillance camera at locations associated with the trafficker drug trafficking conduct. This is done in attempt to warn drug traffickers of law enforcement surveillance or presents or of possible rivals attempt to rob or harm the drug trafficker.

83. On August 14, 2023, case agents were conducting surveillance at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**, when they observed a Buick Enclave bearing Wisconsin license plate 46313DS arrived and parked outside the garage for **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. At 11:18 am an unknown white male exited the Enclave and walked to the south side of the building before returning to the Enclave and moving to a different parking stall. A short time later, the garage door for **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** opened up and the Altima exited the garage and left the parking lot. The unknown white male, operating the Enclave, then exited and again walked to the Southside of the building near the entrance of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**, out of view case agents. At 11:57 the unknown white male exited **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and returned to the Enclave before departing the parking lot.

84. On August 14, 2023, at 12:38 pm, case agents observed a red Subaru Forester bearing Wisconsin license plate 203-NRT arrive at **4460 West Deer Run Drive, #104, Brown**

**Deer, Wisconsin (TARGET LOCATION 1)**. Case agents observed an older white female exit the Forester and as the female exited, the garage door of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** opened up. An individual believed to be LUCKETT exited. Case agents then observed the person believed to be LUCKETT have a brief contact, and appeared to conduct a hand-to-hand transaction with the female. The female returned to the Forester and LUCKETT entered the garage door for **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and closed it behind him. The female then exited the lot.

85. Also on August 14, 2023, at 2:13 p.m., case agents were conducting surveillance of LUCKETT. Case agents observed LUCKETT leaving the area of his residence **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** LUCKETT was driving the Nissan Altima registered to KITTLER. Case agents followed LUCKETT to **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3),** where the Altima parked in an enclosed parking garage of the Blue Ribbon Lofts. Twenty minutes later, the Altima exited the enclosed parking garage, but case agents were unable to observe who was in the Altima and were unable to keep visual on the Altima.

86. On August 14, 2023, at 5:13 pm, case agents observed LUCKETT arrive at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** operating the Altima. Case agents also observed a 2015 Jeep Cherokee bearing Wisconsin license plate AJZ-5351 arrive at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** at the same time as the Altima. Case agents had an obstructed view but observed that both vehicles left the parking lot of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** a short time

later. Based on my training, experience, and investigation into LUCKETT, this conduct was consistent with drug trafficking. Case agents also observed the Jeep return to the lot at 5:25 p.m.

87. On August 15, 2023, at 4:35 pm, case agents observed LUCKETT return to **4460 West Deer Run Drive, Brown Deer, Wisconsin (TARGET LOCATION 1)** and park in front of the garage belonging to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. LUCKETT was operating the Altima. LUCKETT exited the Altima and was carrying a large grey plastic bag which appeared to contain a shoebox style box inside of it. LUCKETT then entered **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** through the garage door, and subsequently closed the garage door behind him.

88. Also on August 15, 2023, at 5:00 p.m., case agents observed an individual, believed to be LUCKETT. The individual had similar characteristics of LUCKETT but case agents were unable to positively identify LUCKETT due to the distance. The individual entered the driver's seat of the Altima and departed the area of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. The Altima returned to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** around 9:15 p.m. and the same individual previously observed enter the Altima at 5:00 pm, exited the Altima and appeared to be alone. The individual then entered **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** through the garage, at which point the garage door closed.

89. Also on August 15, 2023, case agents obtained information from WE Energies which indicated that KITTLER has an active account for **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3).**

90. On August 16, 2023 case agents observed what appeared to be a hand to hand transaction with a white male operating a red Honda Civic. LUCKETT exited **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** through the garage and met with the operator who had exited the Civic. Case agents then observed a hand to hand completed and then the operator left. Based on my training, experience, and investigation into LUCKETT's, this conduct was consistent with a drug transaction.

**F. COURT AUTHORIZED ELECTRONIC SURVEILLANCE FOR LUCKETT'S TELEPHONES**

91. On June 30, 2023, Honorable Judge Stephen C. Dries authorized electronic surveillance of two telephones associated with LUCKETT, 414-998-1157 and 414-998-5926. Judge Dries extended the authorization for electronic surveillance on July 31, 2023 for LUCKETT's telephones 414-998-1157 and 414-998-5926.

**a. Electronic Surveillance for LUCKETT's telephone 414-998-1157**

92. Case agents have reviewed analysis from court authorized electronic surveillance for LUCKETT's telephone 414-998-1157.

93. Case agents determined that the areas near **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1), 4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2), 901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3),** and **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** are the top four areas where LUCKETT's telephone 414-998-1157 was utilizing a cell phone tower since June 30, 2023.

94. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-1157 was stationary near **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin**

**(TARGET LOCATION 1)** varied from two minutes to one day and 11 hours, with the average stop being five hours.

95. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-1157 was stationary near **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** varied from one minute to three hours, with the average stop being 43 minutes.

96. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-1157 was stationary near **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3)** varied from one minute to five hours, with the average stop being 34 minutes.

97. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-1157 was stationary near **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** varied from one minute to one day, with the average stop being five hours.

98. Case agents reviewed the call frequency report for the number 414-998-1157, known to be utilized by LUCKETT. From June 30, 2023, through July 24, 2023, LUCKETT had a total of 6, 782 contacts. Case agents were not able to identify 3,855 of the contacts. LUCKETT's telephone 414-998-1157 had 12 contacts with 414-364-1159, which case agents identified as a number associated with Laquanda KITTLER through Wisconsin DOC records and based on subscriber information.

99. Case agents located three calls between LUCKETT's telephone 414-998-1157 and 920-374-9100. Case agents reviewed law enforcement databases and identified telephone 920-374-9100 belonging to Melvin LARSON. LARSON was arrested in March 2023 for drug related offenses including possession with intent to distribute fentanyl and methamphetamine and provided a Mirandize statement. LARSON stated LUCKETT is his source of supply for heroin

and fentanyl. LARSON was charged in Manitowoc County Case 2023CF211 and was released on a signature bond in June 2023.

100. Case agents also located 67 calls between LUCKETT's telephone 414-998-1157 and 920-606-4311. Case agents reviewed law enforcement databased and obtained subscribed information, which indicated telephone 920-606-4311 is associated with Timothy ZITTLOW. During this investigation, case agents believe ZITTLOW is another known source of supply of heroin/fentanyl in the Manitowoc, Wisconsin area. ZITTLOW was arrested in April and in May 2023 and charged with drug offenses including possession of heroin, in Brown County Cases 2023CF865 and 2023CF866. ZITTLOW provided a Mirandize statement and indicated LUCKETT was his source of supply for heroin/fentanyl. ZITTLOW was released from custody in both cases on a signature bond.

**b. Electronic Surveillance for LUCKETT's telephone 414-998-5926**

101. Case agents reviewed electronic surveillance of LUCKETT's telephone 414-998-5926.

102. Case agents determined that since June 30, 2023, the areas near **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1), 4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2), 901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3),** and **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** are the top four areas where LUCKETT's telephone 414-998-5926 was utilizing a cell phone tower.

103. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-5926 was stationary near **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin**

**(TARGET LOCATION 1)** varied from one minute to one day and eight hours, with the average stop being five hours.

104. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-5926 was stationary near **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** varied from one minute to two hours and 53 minutes, with the average stop being about 50 minutes.

105. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-5926 was stationary near **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3)** varied from one minute to two hours, with the average stop being one hour.

106. Since June 30, 2023, the length of time where LUCKETT's telephone 414-998-5926 was stationary near **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** varied from one minute to 14 minutes, with the average stop being 4 minutes.

107. Case agents reviewed the call frequency report for the number 414-998-5926, known to be used by LUCKETT. From June 30, 2023, through July 24, 2023, LUCKETT's telephone 414-998-5926 had a total of 6, 723 contacts. Case agents were not able to identify 4,206 of the contacts. LUCKETT's telephone 414-998-5926 had three contacts with Laquanda KITTLER's telephone 414-364-1159.

108. Case agents observed LUCKETT's telephone 414-998-5926 and Melvin Larson's telephone 920-374-9100 had 69 contacts during this time. Also LUCKETT's telephone 414-998-5926 and Timothy ZITTLOW's telephone 920-606-4311 had 205 calls during this time period.

**c. LUCKETT'S telephone 414-394-2496**

109. Around August 4, 2023, case agents stopped receiving location data for LUCKETT's telephones 414-998-1157 and 414-998-5926. Based on the information being

obtained, case agents believed that LUCKETT has stopped utilizing or is minimally utilizing the telephones 414-998-1157 and 414-998-5926. Based on my training and experience, I know drug traffickers will often use multiple cellphones and change cellphones numbers in attempts to evade law enforcement detection.

110. Case agents learned that CS 3 identified a new number that CS 3 had been using to contact LUCKETT. The telephone number was 414-394-2496. CS 3 indicated that he/she had been utilizing that telephone **414-394-2496 (TARGET CELL PHONE)** along with the 414-998-1157 line to contact LUCKETT for drug transactions. Case agents obtained call detail records for **414-394-2496 (TARGET CELL PHONE)** from the listed subscriber, T-Mobile. Case agents identified 71 numbers that **414-394-2496 (TARGET CELL PHONE)** has been in contact with between June 30, 2023 and July 31, 2023. Case agents compared these 71 numbers from telephone **414-394-2496 (TARGET CELL PHONE)** to LUCKETT's telephones 414-998-1157 and 414-998-5926. Case agents observed 57 common contacts between telephone **414-394-2496 (TARGET CELL PHONE)** and LUCKETT's telephones 414-998-1157 and 414-998-5926 lines. Based on my training and experience, this information indicates that the same numbers are being contacted by the telephone **414-394-2496 (TARGET CELL PHONE)** and LUCKETT's two previously telephones 414-998-1157 and 414-998-5926, consistent with LUCKETT using **414-394-2496 (TARGET CELL PHONE)**. This call detail information, along with information from CS 3 that he/she was using 414-998-1157 and 414-998-5926 to contact LUCKETT, leads case agents to believe that LUCKETT is now using **414-394-2496 (TARGET CELL PHONE)** to engage in drug trafficking.

111. Further, case agents reviewed the call detail records and identified 920-606-4311 as a number contacting **414-394-2496 (TARGET CELL PHONE)** and LUCKETT's prior

telephone of 414-998-5926. As described above, 920-606-4311 was identified as belonging to Timothy Zittlow. Zittlow's telephone 920-606-4311 was in contact with **414-394-2496 (TARGET CELL PHONE)** 28 times from July 24, 2023, thru July 30, 2023. For reference, 920-606-4311 had contact with LUCKETT's prior telephones 414-998-1157 and 414-998-5926 a total of 2, 647 times from July 1, 2022, thru July 30, 2023. Based on my training, experience, and investigation into LUCKETT, this call detail information is consistent with LUCKETT likely using **414-394-2496 (TARGET CELL PHONE)** to engage in drug trafficking. Case agents also observed one contact with LUCKETT's telephone **414-394-2496 (TARGET CELL PHONE)** and KITTLER's telephone 414-364-1159.

112. Additionally, in review of **414-394-2496 (TARGET CELL PHONE)** call detail records, case agents observed additional numbers of 920-461-2406, 920-645-1910, and 920-374-9100 being in contact with 414-394-2496. As part of the investigation into LUCKETT, Manitowoc County Sheriff's Office have identified 920-461-2406, 920-645-1910, and 920-374-9100 to be associated to local Manitowoc area fentanyl and methamphetamine traffickers with connections to LUCKETT.

**G. LOCATIONS FOR LUCKETT: 4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1); 4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2); 901 West Winnebago Street, Apt 131, Milwaukee, Wisconsin (TARGET LOCATION 3); and 4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4).**

113. Based on the overlapping connections between the DTO and **TARGET LOCATIONS**, case agents' training and experience, and the investigation to date, case agents believe they are likely to find evidence of the DTO's activities inside **TARGET LOCATIONS**, to potentially include cellular telephones utilized by the DTO (and corresponding communications and records saved thereon), physical records associated with and reflective of the DTO's activities

(bank statements, ledgers, car rental receipts, etc.), controlled substances, and firearms, more further described in Attachment B for each **TARGET LOCATION**.

a. **LUCKETT's residence – 4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**.

114. During the course of the investigation case agents developed **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** as the primary address for LUCKETT. Case agents believe LUCKETT lives at the residence based on confidential sources and physical and electronic surveillance. Case agents have also observed LUCKETT using the Altima at this location.

115. CS 3 provided **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** has one of the address CS 3 met LUCKETT to engaged in drug transactions, prior to CS 3's arrest on July 26, 2023. CS 3 also indicated LUCKETT receives "shipments of heroin/fentanyl, and methamphetamine to **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1).**

116. CS 4 also provided that he/she believes LUCKETT has been engaged in drug trafficking at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** CS 4 as recently as August 21, 2023 provided photos of LUCKETT appearing to be engaged in a short-term contacts which appear to show hand to hand transactions consistent with a drug transaction **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**.

117. Case agents has also observed LUCKETT at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** engaged in conduct consistent with drug trafficking. On July 10, 2023, case agents observe LUCKETT at **4460 West Deer Run**

**Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** using the garage. Later, LUCKETT was observed emerging from the garage and having contact with a Civic, which was consistent with a drug transaction. LUCKETT then returned to the garage associated with **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1).**

118. On July 11, 2023, case agents again observed LUCKETT driving a rental vehicle. LUCKETT went to **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** and appeared to engaged in a drug transaction with an unidentified white male**.** LUCKETT then drove his rental vehicle back to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** Case agents later observed what appeared to be drug transaction between LUCKETT and other individual after LUCKETT exit his garage attached to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1).**

119. On July 18, 2023, case agent again observed LUCKETT in the garage of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** Case agents observed what is believed to be a drug transaction between LUCKETT and an unknown male.

120. On July 19, 2023, case agents again observed LUCKETT at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** driving the Altima. Case agents observed LUCKETT drive the Altima back to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** following a suspected drug transaction.

121. On July 20, 2023, case agents observed LUCKETT driving the Nissan Altima to **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and later appear to be engaged in drug trafficking.

122. On August 14, 2023, case agents observed LUCKETT at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1),** when he appeared to be engaged in drug trafficking.

123. On August 15, 2023, case agents observed an individual, believed to be LUCKETT at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1),** using driving the Altima.

124. On August 16, 2023, case agents observed LUCKETT at **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1),** when he appeared to be engaged in drug trafficking.

125. During the course of the investigation case agents conducted routine checks and surveillance on LUCKETT's residence at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)**. Case agents noted LUCKETT was regularly seen using the residence. Most recently, on August 16, 2023, case agents observed LUCKETT arrive at **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and engage in a suspect drug transaction.

126. Case agents have reviewed analysis from court authorized electronic surveillance since June 20, 2023. Case agents determined that the area near **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** is in one of the top four areas where LUCKETT's telephones 414-998-1157 and 414-998-5926 were utilizing a cell phone tower. The length of time where LUCKETT's telephone 414-998-1157 was stationary near **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** varied from two minutes to one day and 11 hours, with the average stop being five hours. The length of time where LUCKETT's telephone 414-998-5926 was stationary near **4460 West Deer Run Drive, Apt #104,**

**Brown Deer, Wisconsin (TARGET LOCATION 1)** varied from one minute to one day and eight hours, with the average stop being five hours. This information is consistent with physical surveillance also.

127. Based on these observations, case agents believe LUCKETT is still activity using **4460 West Deer Run Drive, Apt #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** to engage in drug trafficking.

**b. LUCKETT's stash house 4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**

128. During the course of the investigation case agents developed **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** as a stash house used by LUCKETT for drug trafficking, based on confidential sources and physical and electronic surveillance.

129. CS 1 stated that LUCKETT has equipment used for mixing and cutting the narcotics, such as a blender, a kilo press, digital scales, and a fan along with different type of cutting agents, such as sugar at the residence at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. Also, in May 2023, CS 1 picked up 25 grams of fentanyl from KITTLER at the apartments on **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).**

130. CS 2 stated that he/she has been to **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** to obtain controlled substances from LUCKETT.

131. CS 3 also identified **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** as an apartment where he/she had met LUCKETT at to conduct drug transactions.

132. Case agents has also observed LUCKETT at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** engaged in conduct consistent with drug trafficking.

133. On July 5, 2023, court authorized electronic surveillance indicated LUCKETT's telephone was in the area of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).** Case agents went to the area of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** and located LUCKETT's rental vehicle. After a period of time, case agents observed an individual believed to be LUCKETT exit **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).**

134. On July 11, 2023, case agents again observed LUCKETT outside of **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** in a rental vehicle. Case agents observed what they believed to have a drug transaction occur between LUCKETT and a white male that exited **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).**

135. On August 14, 2023, case agents observed LUCKETT arrive at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** operating the Altima and engage in suspected drug trafficking with another vehicle in the parking lot.

136. During the course of the investigation case agents conducted routine checks and surveillance on LUCKETT's at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**. Case agents noted LUCKETT was seen using the residence. Most recently, on August 14, 2023, case agents observed LUCKETT at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)**.

137. Case agents also learned after review of law enforcement databases, that KITTLER's 2017 Nissan Altima, bearing Wisconsin license plate AGY-1227, which LUCKETT's uses, is listed to **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2).**

138. Case agents have also been reviewing court authorized electronic surveillance since June 30, 2023. Case agents determined that the area at **4319 West Rice Street, Milwaukee,**

**Wisconsin (TARGET LOCATION 2)** is in one of the top four areas where LUCKETT's telephones 414-998-157 and 414-998-5926 were utilizing a cell phone tower. The length of time where LUCKETT's telephone 414-998-157 was stationary near **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** varied from one minute to three hours, with the average stop being 43 minutes. The length of time where LUCKETT's telephone 414-998-5926 was stationary near **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** varied from one minute to two hours and 53 minutes, with the average stop being about 50 minutes. This is consistent with physical surveillance also conducted by case agents. Further analysis has confirmed information from debriefs of CS 1 and CS 2 regarding the cell phone numbers and contact between LUCKETT and CS 1 and CS 2 utilized during drug transactions.

139. Based on these observations, case agents believe LUCKETT is still activity using **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** to engage in drug trafficking.

c. **LUCKETT's girlfriend's residence 901 West Winnebago Street, Apt 131, Milwaukee, Wisconsin (TARGET LOCATION 3)**

140. During the course of the investigation case agents developed **901 West Winnebago Street, Apt 131, Milwaukee, Wisconsin (TARGET LOCATION 3)** as a residence used by LUCKETT and his girlfriend KITTLER based on physical and electronic surveillance.

141. On July 18, 2023, case agent again observed LUCKETT in the garage of **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1).** Case agents observed what is believed to be a drug transaction between LUCKETT and an unknown male. Following this suspected drug transaction, LUCKETT and the unknown male drove to a Holiday

Inn located at 525 North Jefferson Street, Milwaukee, Wisconsin. LUCKETT entered into KITTLER's 2017 Nissan Altima. KITTLER exited the Holiday Inn and also entered the Altima. LUCKETT and KITTLER then drove to the Blue Ribbon Lofts, **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3).** LUCKETT then dropped KITTLER off at **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3).** LUCKETT remained out front for about two minutes and then drove away.

142. On July 19. 2023, case agents observed LUCKETT at **901 West Winnebago Street, Apt 131, Milwaukee, Wisconsin (TARGET LOCATION 3)** after leaving his residence **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1),** where based on surveillance and CSs' statements he engages in drug trafficking.

143. Also on July 19, 2023, after dropping KITTLER at **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3),** LUCKETT left **901 West Winnebago Street, Milwaukee, Wisconsin (TARGET LOCATION 3)** and drove to 414 Exclusive Store. While case agents were conducting surveillance, LUCKETT conducted a hand to hand transaction with an unknown white male and then entered the store. Based on my training, experience, and investigation into LUCKETT, the hand-to-hand transaction was consistent with a drug transaction.

144. On August 14, 2023, at 2:13 pm case agents again followed LUCKETT leaving **4460 West Deer Run Drive, #104, Brown Deer, Wisconsin (TARGET LOCATION 1)** and traveling to **901 West Winnebago Street, Apt 131, Milwaukee, Wisconsin (TARGET LOCATION 3).** LUCKETT was driving KITTLER's Nissan Altima. LUCKETT entered the enclosed parking garage for **901 West Winnebago Street, Apt 131, Milwaukee, Wisconsin (TARGET LOCATION 3)** and remained there for approximately 20 minutes. Case agents then

observe LUCKETT leave the parking garage in KITTLER's Nissan Altima and drive away. Unfortunately, case agents lost LUCKETT.

145. Later on August 14, 2023, at 5:13 pm, case agents observed LUCKETT at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** still operating the Nissan Altima. Case Agents also observed a 2015 Jeep Cherokee bearing Wisconsin license plate AJZ-5351 arrive at **4319 West Rice Street, Milwaukee, Wisconsin (TARGET LOCATION 2)** at the same time as LUCKETT. Case agents had an obstructed view but noted that both vehicles left the parking lot a short time later, and also observed the Jeep return to the lot at 5:25 pm. Based on my training, experience, and investigation into LUCKETT, this short term contact between vehicles is consistent with a possible drug transaction.

146. Case agents have also been reviewing court authorized electronic surveillance since June 30, 2023. Case agents determined that the area at **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3)** is in one of the top four areas where LUCKETT's telephones 414-998-1157 and 414-998-5926 were utilizing a cell phone tower. The length of time where LUCKETT's telephone 414-998-1157 was stationary near **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3)** varied from one minute to five hours, with the average stop being 34 minutes. The length of time where LUCKETT's telephone 414-998-5926 was stationary near **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3)** varied from one minute to two hours, with the average stop being one hour.

147. Case agents have also obtained records from the apartment which indicated that KITTLER is the occupant of **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3).**

148. Based on these observations, case agents believe LUCKETT spends significant amount of time at **901 West Winnebago Street, #131, Milwaukee, Wisconsin (TARGET LOCATION 3)** and has access to the residence. Based on my training and experience, I know drug traffickers will often use significant others' or family members' residence to store or hide evidence of their drug trafficking, including documentation of drug trafficking or proceeds from drug trafficking.

**d. LUCKETT"s mother's residence 4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**

149. During the course of the investigation case agents developed **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** as a residence used by LUCKETT historical when drug trafficking and currently. This is based on review of Wisconsin DOC records and physical and electronic surveillance.

150. Case agents reviewed Wisconsin Department of Transportation record, which indicated LUCKETT reported his residence as **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**. Case agents learned through LUCKETT's DOC records, **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** was also his mother's residence, Lenore Gardner. Case agents also reviewed WE Energies records on August 15, 2023, which indicated Lenore Gardner has an active account for **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4).**

151. LUCKETT is currently on extended supervision for possession with intent to deliver heroin and fleeing. LUCKETT reported to Wisconsin DOC that his residence is **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4).** On June 1, 2023, LUCKETT reported to his probation agent that he did not have any changes to his address, **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**. LUCKETT was

requesting to move in with his father "on the east side" due to his mother getting marries and needing her "own space." Records from DOC did not indicate any change of residences was approved or provided.

152. Additionally, case agents were notified that Probation and Parole received several reports that LUCKETT is dealing large quantities of illegal narcotics. These reports were on April 26, 2022, April 29, 2022, August 1, 2022. On August 2, 2022, LUCKETT was taken into custody on a probation hold based on the allegations August 1, 2022 at **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**. At the time of arrest at the location of **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)**, LUCKETT was in possession of four cellphones. Based on my training and experience, I know that drug trafficker will often use several phones to engage in their drug trafficking business.

153. Case agents have also been reviewing court authorized electronic surveillance since June 30, 2023. Case agents determined that area near **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** is in one of the top four areas where LUCKETT's telephones 414-998-1157 and 414-998-5926 were utilizing a cell phone tower. The length of time where LUCKETT's telephone 414-998-1157 was stationary near **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** varied from one minute to one day, with the average stop being five hours. The length of time where LUCKETT's telephone 414-998-5926 was stationary near **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** varied from one minute to 14 minutes, with the average stop being 4 minutes. This is also consistent with physical surveillance which has determined LUCKETT at **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** also.

154. Additionally, case agents have conducted surveillance at **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** and observed surveillance cameras on the west side, south side, and east side of the residence. Based on my training and experience, I know that drug traffickers will often use surveillance cameras at different locations in which the trafficker is to store controlled substances, drug proceeds, or other documentations and/or evidence of drug trafficking. Drug traffickers will do this in an attempt to evade law enforcement and/or to protect their controlled substance, drug proceeds or other evidence of drug trafficking from rival drug traffickers.

155. Based on these observations, case agents believe LUCKETT continues to have contact with his mother's residence **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4)** and has access to the residence, while engaging is drug trafficking. Based on my training and experience, I know drug traffickers will often use significant others' or family members' residence to store or hide evidence of their drug trafficking, including documentation of drug trafficking or proceeds from drug trafficking. This is consistent with LUCKETT's prior arrest, in which four cellphones were collected when he was arrested at **4820 North 72nd Street, Milwaukee, Wisconsin (TARGET LOCATION 4).**

**H. CRIMINAL HISTORY OF LUCKETT**

156. Upon review of LUCKETT's criminal history, case agents learned LUCKETT is a convicted felon and has a history of drug trafficking. LUCKETT"s criminal convictions date from February 18, 2008, until the current date.

157. On July 23 2008, in Milwaukee County Case 2008CF888, LUCKETT was convicted of battery, party to a crime, disorderly conduct, and receiving stolen property.

158. On December 12, 2008, LUCKETT was convicted Milwaukee County Case 2008CF3634 of possession with intent to deliver cocaine.

159. On October 6, 2009, LUCKETT was convicted in Milwaukee County Case 2009CF4597 for possession with intent to deliver cocaine.

160. On September 25, 2017, LUCKETT was convicted in Milwaukee County Case 2016CF67 for possession with intent to deliver heroin, second or subsequent offense, and fleeing.

161. On February 13, 2017, LUCKKET was convicted in Milwaukee County Case 2017CF208 for felony bail jumping.

162. LUCKETT is currently on extended supervision with Wisconsin Department of Corrections.

163. The above listed convictions do not reflect all criminal arrest for LUCKETT.

## III. TECHNICAL BACKGROUND

164. I believe cellular telephones assigned call numbers **414-394-2496 (TARGET CELL PHONE)**, whose service provider is T-Mobile ("Service Provider"), a wireless telephone service provider, continues to contain valuable information on this account that could be used as evidence for the possible crimes of use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances; and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846.

## IV. JURISDICTION

165. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court

of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## V. TECHNICAL BACKGROUND

166. Based on my training and experience, I know that Service Provider can collect historical and prospective cell-site data and historical and prospective E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Service Provider's network or with such other reference points as may be reasonably available.

### A. Cell-Site Data

167. In my training and experience, I have learned that Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

168. Based on my training and experience, I know that Service Provider can collect cell-site data on a historical and prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service

provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business to use this information for various business-related purposes.

**B. E-911 Phase II / GPS Location Data**

169. I know that some providers of cellular telephone service, including Service Provider, have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers.

170. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

171. I also know that certain wireless providers, such as Service Provider, can provide precision location information, also known as estimated location records or historical handset location data, on both a historical and prospective basis. Each provider refers to its

proprietary estimates of a cellular device's location differently. This information, however, is sometimes referred to as geolocation information (PING), Network Event Location System (NELOS) data, Global Positioning System (GPS) data, cell tower triangulation or trilateration, round-trip time, or real-time tool (RTT), per-call measurement data (PCMD), historical E911 data, or precision measurement information.

172. Based on my training and experience, I know that Service Provider also can collect per-call measurement data, which Service Provider also refers to as the "real-time tool" ("RTT"). RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

173. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

**C. Pen-Trap Data**

174. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber

Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

**D. Subscriber Information**

175. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business.

176. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify Target Cell Phone's user or users, the locations of that user or users, and the patterns of that user or users. A frequency analysis of the telephone communications between Alexy ROMERO, Qian COLLINS, Deante K. BRUCE, Dominique LUCKETT and Rico SMITH and other identified and unidentified subjects is material, in that it can establish whether the calls described above are a deviation from their normal patterns of communication. The frequency analysis of the locations associated with the cellular devices can establish whether the locations are deviations or consistent with normal patterns. This information is relevant to show whether Alexy ROMERO, Qian COLLINS, Deante

K. BRUCE, Dominique LUCKETT and Rico SMITH and others acted-in-concert, by establishing the nature and extent of their relationship, the existence and scope of the conspiracy, the pattern of their communications, their patterns of travel, and any deviations from those patterns.

## VI. AUTHORIZATION REQUEST

177. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

178. I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

179. I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the locations of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

180. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2023R00201**

1. Records and information associated with the cellular device assigned call number **414-394-2496** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of T-Mobile referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. The Target Cell Phone.

## ATTACHMENT B
## Particular Things to be Seized
## Matter Number 2023R00201

### I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from June 1, 2023, to present:

   i. Names (including subscriber names, usernames, and screen names);

   ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

   iii. Local and long-distance telephone connection records;

   iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

   v. Length of service (including start date) and types of service utilized;

   vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, date today's date, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 60 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances; and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Dominique K. LUCKETT, Laquanda KITTLER and other identified and unidentified subjects. during the period of April 1, 2023, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

❒ Original

CLERK'S OFFICE
A TRUE COPY
Aug 28, 2023
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Records and information associated with the cellular device assigned call number 414-394-2496 that is in the custody or control of T-Mobile, more fully described in Attachment A

Case No. 23 MJ 161

Matter Number 2023R00201

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the ____________ District of ____________ *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before September 11, 2023 *(not to exceed 14 days)*

❒ in the daytime 6:00 a.m. to 10:00 p.m. ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to William E. Duffin .
*(United States Magistrate Judge)*

❒ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❒ for ____ days *(not to exceed 30)* ❒ until, the facts justifying, the later specific date of ____________ .

Date and time issued: 08/28/2023 3:26 pm

William E. Duffin
*Judge's signature*

City and state: Milwaukee, WI

U.S. Magistrate Judge William E. Duffin
*Printed name and title*

## Return

| Case No.: 23 MJ 161 | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: ____________________

____________________
*Executing officer's signature*

____________________
*Printed name and title*



Print Save As... Reset

**ATTACHMENT A**
**Property to Be Searched**
**Matter Number 2023R00201**

1. Records and information associated with the cellular device assigned call number **414-394-2496** (referred to herein and in Attachment B as the "Target Cell Phone"), that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Service Provider") a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054.

2. The Target Cell Phone.

**ATTACHMENT B**
**Particular Things to be Seized**
**Matter Number 2023R00201**

## I. Information to be Disclosed by the Service Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period from June 1, 2023, to present:

i. Names (including subscriber names, usernames, and screen names);

ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

iii. Local and long-distance telephone connection records;

iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

v. Length of service (including start date) and types of service utilized;

vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber

Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records; and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as per-call measurement data (also known as "real-time tool" or "RTT").

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e., antenna towers covering specific geographic areas) and sectors (i.e., faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication, as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, date today's date, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 60 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with

such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

**II.** This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

**III. Information to be Seized by the Government**

All information described above in Section I that constitutes evidence and instrumentalities of possible crimes of use of a communication device in furtherance of drug trafficking, in violation of Title 21, United States Code, Section 843; distribution and possession with intent to distribute controlled substances; and conspiracy to distribute and possess with the intent to distribute controlled substances, violations of Title 21, United States Code, Sections 841 and 846, have been committed by Dominique K. LUCKETT, Laquanda KITTLER and other identified and unidentified subjects. during the period of April 1, 2023, to present.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.